415 So.2d 272 (1982)
Ms. Janice RESTER
v.
T. L. JAMES CONSTRUCTION CO., et al.
No. 14674.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
Rehearing Denied June 23, 1982.
*273 Gerald Leydecker, New Orleans, for plaintiff, appellee.
Gerard M. Dillon, New Orleans, for defendants, appellants.
Before LEAR, CARTER and CHIASSON, JJ.
CARTER, Judge.
Highlands Insurance Company, defendant-appellant, appeals a judgment in favor of plaintiff-appellee, Janice Rester, for property damages and bodily injuries sustained in a vehicular collision. The accident occurred on November 16, 1979, at approximately 8:00 a. m. in St. Tammany Parish. The named defendants were T. L. James Construction Co., Louisiana Paving Company, Clyde H. Richardson, the driver of the truck involved in the accident and an employee of Louisiana Paving Company, and Highlands Insurance Company, insurer of the aforementioned. Following a trial on the merits, the court rendered judgment in favor of the plaintiff-appellee and against the defendant-appellant, Highlands Insurance Company, in the principal sum of $23,718.00.
The issues presented on this appeal are whether Clyde H. Richardson was guilty of negligence, whether Ms. Janice Rester was guilty of negligence or contributory negligence, and whether the amount of damages awarded to plaintiff is excessive.
The collision involved here occurred at the intersection of an access road leading to State Police Troop L off U. S. Highway 190 and a service road to U. S. 190 which was under construction, barricaded, and closed. Access to the headquarters of Troop L can be had by either of two roads leading from U. S. 190. The northernmost access road leads directly to Troop L headquarters. The highway construction plans provided for the building of a service road lying west of U. S. 190 and running in a north-south direction in front of Troop L headquarters. *274 Although the service road had not been completed, the asphalt surface had been laid approximately three weeks before the accident. The east margin of the blacktop surface of the service road lies 54 feet from the west margin of the hard surface on U. S. 190.
Prior to the accident, Louisiana Paving Company had the contract with the State of Louisiana to build this particular service road. Vehicles entering and departing from the premises of Troop L headquarters had to cross the service road that was under construction. At the request of the commander of Troop L, Louisiana Paving Company had placed "Road Closed" signs on the blacktop surface of the access roads to Troop L. These signs did not extend entirely across the service road but occupied a substantial portion of one lane of the service road and were clearly visible to those traveling on the service road and to those traveling on the access roads to Troop L.
Ms. Rester, who was employed at Troop L, was on her way to work and had been proceeding on U. S. 190 in a southerly direction. She turned right onto the access road leading directly to Troop L, passed a State Police automobile on her left that was stationary, and proceeded towards the intersection of the access road and the service road. The collision occurred when the front of her vehicle struck the front of the truck operated by Richardson just as her vehicle entered the intersection. The stationary State Police vehicle was occupied by Trooper Booth who did not actually see the accident, but did testify as to what he observed after the accident.
Prior to the accident, both Richardson and Ms. Rester had traveled the same roads they were traveling on the day of the accident. Richardson testified that he had traveled the service road on prior occasions and had yielded to other vehicles entering the Troop L premises because he knew he was on a closed road. At the time of the accident, he was changing job locations from a job site sought of the Troop L headquarters and was carrying out job instructions to meet a grading machine near the north end of the service road. Ms. Rester testified that she had seen construction vehicles traveling on the service road prior to the date of the accident and that she was aware that the "Road Closed" signs had been put on the service road prior to the accident.
The trial court, in very well prepared written findings of fact and reasons for judgment, found that Ms. Rester was traveling approximately 15 mph. when she attempted to cross the service road, and that Richardson was proceeding up the service road at approximately 30 mph. He further found that when Ms. Rester cleared the trooper's vehicle, she looked to her left but did not see the Louisiana Paving dump truck. He found that Richardson looked in the direction from which Ms. Rester was coming but did not see her until she was almost on the service road, at which time he applied his brakes and skidded into the Rester vehicle. He also found that Ms. Rester did not see the dump truck until a fraction of a second before the impact. The truck came to a stop approximately eight feet beyond the point of impact. Ms. Rester's vehicle traveled approximately 60 feet before it came to rest against one of the barricades.
The trial judge concluded that the negligence of Clyde Richardson was clear, that Janice Rester was free of any contributory negligence, and that she was therefore entitled to recover appropriate damages from the defendants.
We agree with the conclusions reached by the trial court.
Appellant strenuously contends that Richardson was an employee of a contractor whose proper and lawful duties required him to go upon any portion of a highway under construction and was thus under the exemption provided in Subsection (C) of La.R.S. 32:237[1]. That section clearly enjoins *275 any person from disobeying the instructions, warnings, or barricades placed upon a highway under construction or being repaired, and further enjoins vehicle operators from driving around or through any such barricades or fences placed upon a closed highway, unless at the time otherwise directed by a police officer. This section also places prima facie fault and responsibility for any damage to persons or property on those persons who violate the above prohibitions against use. Section (C) of La.R.S. 32:237 exempts from these prohibitions employees of the department or of any contractor or subcontractor whose proper and lawful duties require them to go on any portion of the highway which is under construction or in the process of being repaired. It further provides that the presence of such persons, or that of machinery being operated by them on any portion of a highway, which is under construction or in the process of being repaired, shall not be deemed negligence.
The trial judge obviously found that there was no construction in progress on the service road at the time of the accident. The trial judge found that Richardson was using the service road as a matter of personal convenience to drive his empty dump truck to a point north of the accident scene, when U. S. 190, a highway in use, could have been used for this purpose. We agree that La.R.S. 32:237(C) provides no relief for the defendant.
Counsel for appellant contends that it would be inequitable to find Richardson at fault without likewise concluding that Ms. Rester was equally guilty of negligence in failing to timely see the Richardson truck and to stop. He argues that since there was some distance between Trooper Booth's State Police vehicle (stopped at the edge of U. S. 190) and the eastern edge of the service road, Ms. Rester should have been able to see the Richardson truck and to stop in time to avoid the accident, and that by not doing so, she failed to keep a proper lookout. However, Ms. Rester was aware of the existence of the "Road Closed" signs, and she had the right to assume that any vehicle using the service road would yield the right of way and come to a stop. Richardson admitted that he knew he was supposed to yield the right of way at every access road because he knew that the access roads had the right of way. He further testified that on every occasion prior to the accident he did in fact yield the right of way to vehicles on the access road.
Under these circumstances, Ms. Rester had the right to assume that any vehicle using the service road would yield the right of way since she was traveling on a "highway" *276 and the dump truck was traveling on a closed road. She was not negligent in failing to see the dump truck before she entered upon the hard surface of the service road. Cf. Fontenot v. State Farm Mutual Insurance Company, 345 So.2d 186 (La.App. 3d Cir. 1977).[2]
The trial court found that Ms. Rester was not contributorily negligent in failing to see the Richardson truck; however, even had she seen the truck, she would have had every right to believe that it would stop as it was approaching a favored open road.[3]
Counsel for appellant also argues that the access road whereupon appellee was traveling was either a driveway or a crossover between two roadways and thus was a secondary roadway to the service road that was the highway, in which case appellee should have yielded. We find no merit to these arguments.
La.R.S. 32:1 defines a highway as follows:
"Highway means the entire width between the boundary lines of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel, including bridges, causeways, tunnels and ferries; synonymous with the word "street."
The service road under construction does not qualify as a highway since it was closed to the public and remained under construction. It then follows that the site of the accident was not an "intersection" within the strict legal definition of that word because there was not a connection of "two highways".[4]
Turning now to the issue of quantum, it is Horn Book law that we may not disturb a trial court's ruling on the question of quantum unless the trial court has abused its discretion in making the award. The trial court awarded plaintiff $12,000.00 for her pain, suffering, anguish, disfigurement and anxiety, both past and future, and the following special damages:

1. Loss of wages $ 2,528.00
2. Physical damage to
 automobile 2,635.00
3. Prescriptions 248.38
4. St. Tammany Parish
 Hospital 3,967.62
5. Physical therapy 325.00
6. X-rays 59.00
7. Dr. Francis Rodwig 1,305.00
8. Dr. Matta 70.00
9. Ambulance 45.00
10. Wrecker bill for car 35.00
11. Future medical for
 psychiatric care 500.00

Ms. Rester sustained multiple lacerations of the scalp, right eye, and left leg. She was seen by Dr. Rodwig, General Surgeon and Emergency Room Specialist at the St. Tammany Hospital, immediately after the accident. There was no evidence of a skull fracture, but her complaints of dizziness indicated a closed head injury. Plastic surgery was performed on her face and the laceration on her left knee was closed. She had numerous contusions and abrasions and was hospitalized until December 5, 1979.
*277 On December 12, 1979, she was seen by Dr. Rodwig and complained of nervousness, nightmares, and pain in her left knee. Dr. Rodwig referred her to a physical therapist for work on her left knee. On December 19, she was still having difficulty with pain in her left knee and dizziness. Dr. Rodwig suggested psychiatric help. On March 4, 1980, plaintiff had a skin graft on the left knee and while under anesthesia had a tubular ligation and appendectomy. She was hospitalized from March 13 through March 22, 1980 for this surgery. Dr. Rodwig testified that this entire hospital stay would have been required for the skin graft and estimated that the other hospital services and medication could be fairly divided with two-thirds apportioned to the skin graft and one-third to the other surgery not related to the accident. She was discharged on July 15, 1980 and continued to complain of headaches and emotional problems. Considering all of the above, we can not say that the trial court abused its discretion in making an award of $12,000.00 in general damages and the sum of $11,718.00 for special damages.
For the above and foregoing reasons, the judgment of the trial court is affirmed at defendant-appellant's cost.
AFFIRMED.
NOTES
[1] La.R.S. 32:237 provides as follows:

"A. No one shall in any way tamper with, move, damage or destroy any barricade, signs or signals placed upon any highway by the department or by any contractor or subcontractor doing highway construction or repair work under or by authority of the department, nor shall any person disobey the instructions, signals, warnings, or marking of any warning signs, signals, or barricades so placed upon any highway under construction or being repaired nor shall any person drive around or through any barricade or fences placed upon any closed highway by the department or any contractor or subcontractor doing highway construction or repair work under or by authority of the department, unless at the time otherwise directed by a police officer. (Amended by Acts 1975, No. 256, S. 1)
B. Persons violating this Section shall be prima facie at fault and responsible for any damage to persons or property resulting from the said violation. Nothing contained in this Section shall be construed to affect the liability of any other persons for failure to properly maintain warnings and markings of construction work.
C. The provisions of this Section shall not apply to the employees of the department or of any contractor or subcontractor or other person whose proper and lawful duties require them to go upon any portion of a highway which is under construction or in the process of being repaired, nor shall the presence of such persons, or that of machinery being operated by them, upon any portion of a highway, which is under construction or in the process of being repaired, be deemed negligent.
D. Nothing contained in this Section shall be construed to prevent or interfere with peaceful picketing by a labor organization. Acts 1962, No. 310, S. 1.
E. Every person convicted of a violation of this Section shall be punished by a fine of not less than five dollars nor more than one hundred dollars or by imprisonment for not more than thirty days or by both such fine and imprisonment. (Added by Acts 1975, No. 256, S. 1)."
[2] In Fontenot, a Ms. Jack was traveling on Lithcote Road in Evangeline Parish when an accident occurred with a Mr. Fontenot who was traveling on Progress Road, a new blacktop two-lane thoroughfare which ran east and west, but was still under construction when the accident occurred. Ms. Jack was traveling at approximately 30 mph. when she observed Mr. Fontenot enter the intersection immediately in front of her. She was unable to stop and collided with the Fontenot vehicle. Our brethren of the Third Circuit held that Progress Road had not been open for public use and its junction with Lithcote Road could not be considered as being an intersection within the meaning of La.R.S. 32:121. They further held that Ms. Jack had the right to assume that no vehicles would use that road. She was not negligent in failing to see the Fontenot car before it entered the intersection in front of her.
[3] Cf. Breaux v. State Farm, 267 So.2d 230 (La. App. 3rd Cir. 1972).
[4] La.R.S. 32:1(26) "Intersection" means:

"(a) The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.
..."
(Emphasis provided by court)